**162**

FRONTIER BROADCASTING COM-
PANY, Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee.

FRONTIER BROADCASTING COM-
PANY, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

Nos. 21594, 21598.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 1, 1968.

Decided Feb. 26, 1969.

Mr. Alan Y. Naftalin, Washington, D. C., with whom Mr. Arthur B. Good-kind, Washington, D. C., was on the brief, for appellant in No. 21,594 and petitioner in No. 21,598.

Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, John H. Conlin, Associate General Counsel and Stuart F. Feldstein, Counsel, Federal Communications Commission, were on the brief, for appellee in No. 21,594 and respondent in No. 21,598. Mr. Howard E. Shapiro, Washington, D. C., entered an appearance for respondent United States.

Mr. Howard Monderer, Washington, D. C., filed a brief on behalf of National Broadcasting Company, Inc., as amicus curiae, urging reversal.

Before TAMM, LEVENTHAL and ROBINSON, Circuit Judges.

TAMM, Circuit Judge:

Appellant, Frontier Broadcasting Company, seeks review of certain orders of the appellee, the Federal Comunications Commission, granting permission to Laramie Plains Antenna TV Association, Inc. to rebroadcast, by way of translator stations, certain signals of three Denver, Colorado, network affiliates without providing for non-duplication protection of appellant's station KFBC–TV at Cheyenne, Wyoming, and denying appellant's

request for reconsideration of that grant. Appellant also seeks review of an order to show cause why Laramie Plains TV Association, Inc. should not be required to cease and desist its operation at Laramie alleging such operation to be in direct conflict with Section 325(a) of the Communications Act of 1934, as amended, 47 U.S.C. § 325(a) (1964). These controversies were consolidated for this appeal and accordingly, since we hold that the operations of Laramie Plains Antenna TV Association, Inc., are in violation of Section 325(a) of the Communications Act of 1934, as amended, we reverse the decision of the Commission in this regard and vacate its order of December 22, 1967, denying appellant's request for the issuance of an order to show cause.

█ The facts, in so far as they pertain to questions before us, are that the appellant, Frontier, is the licensee of station KFBC–TV, Cheyenne, Wyoming. KFBC–TV is an affiliate of all three major networks and broadcasts selected network programs on a regular basis in addition to its local programming. The normal service area, technically the Grade B contour, of KFBC–TV encompasses the city of Laramie, Wyoming, lying some forty-two miles to the northwest of Cheyenne. It is the only station received "off-the-air" in Laramie. Laramie Plains Antenna TV Association, Inc., a non-profit corporation, is the operator of three television translator stations located in the area immediately surrounding the city of Laramie. In November, 1965, the Association applied to the Commission for authorization to assume operation of the translator stations declining to assume certain contractual obligations of its predecessor, Albany Electronics, Inc., in regard to non-duplication protection of KFBC–TV. The Association also certified that it had requested and received rebroadcast consent from three network affiliated television stations located in Denver, Colorado. It should be noted that this permission was qualified to the extent that they consented only with respect to *local* programming, bottoming denial of rebroadcast consent of their network programs upon contractual obligations with the National Broadcasting Company, the Columbia Broadcasting System and the American Broadcasting Company. The first two of the networks expressly informed the Association that they had prohibited their Denver stations from granting rebroadcast consent unless the Association would assure non-duplication protection of KFBC–TV network programming. The American Broadcasting Company declined to respond. Frontier objected to the authorization of Association's operations unless the Commission required them to be bound under the agreements between Albany Electronics and Frontier or, in the alternative, that they be required to comply with non-duplication rules as applied to CATV systems in the area.[1] In July of 1967, the Commission granted Association's request and refused to impose the requests of Frontier with regard to non-duplication by the translator stations.[2] In that opinion the Commission held that despite the qualified permission of the three Denver stations for rebroadcast consent, the Association "ha[d] received the requisite rebroadcast consent within the meaning of Section 325(a) of the Communications Act. * * * The only question is the extent of the rebroadcast consent. * * * [I]t *may well be* that, in order to obtain rebroadcast consent for network programs, Laramie need only to provide non duplication

---

[1.] 47 C.F.R. § 74.1103 (1968). The CATV system in Laramie services some 80% of the television homes. Accordingly, it appealed the application of that section to the 10th Circuit Court of Appeals. That court, on January 3, 1969, upheld the Commission's application of non-duplication protection. Community Television, Inc. v. United States of America and FCC, No. 9,954 (10th Cir., Jan. 3, 1969). *See also* Carter Mountain Transmission Corp. v. FCC, 116 U.S.App.D.C. 93, 321 F.2d 359 (1963).

[2.] The Commission intends to view such protection by non-profit translator stations on an ad hoc basis. Second Report and Order, 2 F.C.C.2d 725, 759 (1966).

protection for station KFBC–TV." (Italics in original.) Laramie Plains Antenna TV Association, Inc., 11 P & F Radio Reg.2d 234, 237 (1967). One month later Frontier filed a petition for reconsideration of the Commission's order and requested the Commission to direct the Association to show cause why it should not cease and desist operation in violation of Section 325(a) of the Communications Act and again suggesting that non-duplication protection, if afforded, would satisfy Frontier. On December 22, 1967, the Commission, Commissioner Cox dissenting, denied both requests of Frontier and held that "[t]he consent which the Denver stations have given to Laramie is sufficient to satisfy the requirements of Section 325(a) of the Communications Act. * * * We believe that such consent of the station, while limited in some respects, was given. As to the limitations, even if the consents given by the Denver stations were not sufficient to satisfy the statute, we are of the view that the public interest would require their consent * * *" (App. 45–46). None of the Denver stations participated in this matter and none was ever ordered, in the public interest,[3] to give full consent. Faced then with the realization that the programs of KFBC–TV would be completely duplicated by the Association via the Denver stations, Frontier brought its case to this court. Unsatisfied that the Commission was correct in its ruling on the issue of "rebroadcast consent" under the Communications Act, we hereinafter hold that "rebroadcast consent" was *not* given as to the network programs by either the originating stations or the networks and, as such, Laramie Plains Antenna TV Association, Inc. is operating outside Section 325(a) of the Communications Act.

"No person within the jurisdiction of the United States shall knowingly utter * * * any false * * * signal * * * *nor shall any broadcasting station rebroadcast the program or any part* *thereof of another broadcasting station without the express authority of the originating station.*" (Emphasis supplied.) 47 U.S.C. § 325(a) (1964). Thus, Congress has, by law, expressed its intention to provide certain protections to originating stations with regard to the programs they choose to put on the air. The Commission, acting under its statutory authority, has sought to construe this statute to mean that should a broadcasting station consent to the use of its *local* programs for rebroadcasting by another broadcast station, "such consent" meets the statutory phraseology sufficiently to imply that consent for *all* its programs has been given. That such a construction contravenes the plain words of the statute is clear from the words of the Commission itself. "We think that section 325(a) should be interpreted as providing that *no* program may be rebroadcast without the consent of the station whose radio signals are received, and transmitted * * * *"* (Emphasis supplied). Report on Amendment of Rebroadcasting Rules, 1 P&F Radio Reg. Part 3, par. 91, pp. 1131–1132 (1952). In 1959 the Commission followed this interpretation of Section 325 (a) in the case of Palm Springs Translator Station, Inc., 17 P&F Radio Reg. 1263 (1959), where it held in a case where a translator station sought permission from originating broadcast stations for rebroadcast consent and was given consent to rebroadcast *network* programs only, that it was in violation of Section 325(a) of the Act when it broadcasted *local* programs—such violation reflecting adversely upon its qualifications to be a licensee. *Id.* at 1292. Now the Commission seeks to modify, not only the statutory impact but the force and logic of their prior interpretations. Such disregard for the past and dissolution of the present cannot be condoned.

The Commission would argue that, albeit, the stations did not give their full consent, they *could* have been required to

---

3. Channel Seven, Inc. (KLTV), 3 P&F Radio Reg.2d 680 (1964); KAKE-TV and Radio Inc., 10 P&F Radio Reg. 2d 799 (1967).

do so in the public interest. Channel Seven, Inc., *supra* note 3. The fact is that the Commission has never entered such an order in that regard directed toward the originating station, nor has any hearing in this respect ever been held with notice and participation by the Denver affiliates. Therefore, what *could* be done is as doubtful, on the present record, as what *was* done.

■ The Commission is set up by Congress to administrate a field which is becoming so complex as to stagger the imagination. A great deal of authority has been delegated to the Commission to enable it to carry out its function of regulating the public airways "in the public interest." However, Congress has seen fit to legislate from time to time to protect significant interests in this field. Section 325(a) of the Communications Act is an effort by Congress to recognize the right of the originating station to control its programs once they have left the tower. Here, each of the Denver affiliates denied use of their network programs for rebroadcast and, as "originating stations," expected statutory protection in this regard. Whether the denial was in the first person or pursuant to contractual obligations with the "originating programmers" (the networks) is of no consequence. What is important is that "express authority" was not received as to these stations and the clear words of Section 325(a) must be held controlling. "Its revision, if desirable as a matter of policy, must be left to Congress." Report on Amendment of Rebroadcast Rules, *supra,* at 1132. Congress, not the court nor the Commission, is the proper "forum."

Accordingly the order appealed from must be vacated. Entry of order will be stayed in order to give opportunity to any party to file, within ten days from the date of this opinion, a memorandum requesting that the court's order provide for remand, if such remand is considered in the public interest, lest a bare reversal by this court operate to terminate this docket and preclude further proceedings therein that may be in the public interest.

So ordered.